# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

C. BRYAN OAKLEY                                                                              PETITIONER
ADC #108541

v.                                         1:18cv00054-KGB-JJV

WENDY KELLEY, Director,
Arkansas Department of Correction                                                     RESPONDENT

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Kristine G. Baker.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a new hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial

evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

>Clerk, United States District Court
>Eastern District of Arkansas
>600 West Capitol Avenue, Suite A149
>Little Rock, AR 72201-3325

## **DISPOSITION**

**I.    BACKGROUND**

Before the Court is C. Bryan Oakley's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.[1] (Doc. No. 2.) Mr. Oakley is an Arkansas inmate in the Grimes Unit of the Arkansas Department of Correction (ADC).

Mr. Oakley has a violent history leading to his incarceration for serious crimes. Mr. Oakley's odyssey with the criminal justice system began on June 27, 1996, when he was sentenced to a term of twenty years' imprisonment in the ADC. (Doc. Nos. 2 at 5; 9-2.)

The Arkansas Court of Appeals recited the facts of Mr. Oakley's original conviction as follows:

> After a jury trial in the Desha County Circuit Court, appellant was convicted of attempted first-degree murder, attempted second-degree murder, kidnapping, burglary, first-degree false imprisonment, and first-degree terroristic threatening. He was sentenced to an aggregate term of twenty years in the Arkansas Department of Correction. He now argues that the trial court erred in submitting conflicting charges to the jury, that the State's evidence was insufficient to sustain his attempted first-degree murder and kidnapping convictions, and that the denial of the motion to continue he made immediately prior to sentencing was erroneous. We find no error and affirm the judgment.

---

[1] I find Mr. Oakley's petition falls under 28 U.S.C. § 2241 because the Petition attacks the execution of his sentence, or the manner in which the sentence is being carried out. *Matheny v. Morrison*, 307 F.3d 709, 711-712 (8th Cir. 2002); *DeSimone v. Lacy*, 805 F.2d 321, 323 (8th Cir. 1986); *Nichols v. Symmes*, 553 F.3d 647, 649 (8th Cir. 2009).

> Sandy Oakley testified that she and appellant were married May 28, 1994, and during the short marriage, lived mostly at her mother's house, except for a very short stay in Texas with appellant's parents. Because of appellant's problems with alcohol, they separated in September 1994, and she continued to live with her mother. On the night of the incident, Mrs. Oakley testified, she saw appellant outside her mother's apartment around midnight, and got out of bed. Appellant then crashed through the living room window, and Mrs. Oakley attempted to run out of the front door. She heard her eldest son, Sean, screaming that appellant had a knife and she came back inside, where she was grabbed by the hair.
>
> Appellant had already stabbed his stepson, Sean, and told Mrs. Oakley: "He's going to die tonight.... He's just going to bleed to death." He bashed her head against a wall and door facing, slapped her, and dragged her into a bedroom where the youngest child was sleeping. Mrs. Oakley testified that appellant picked up the 2 1/2 week old baby by the neck "and started twisting him around over his head."
>
> Appellant then tossed the child into the crib, causing him to hit his head, and once again turned on Mrs. Oakley. He choked her, stabbed her in the head and back, and bit her arm. When Mrs. Oakley finally freed herself, the police had arrived.
>
> Sergeant Larry Posey of the Dumas Police Department, testified that he was the first officer to arrive at the scene. Posey stated that when he arrived, both Sandy Oakley and her son Sean were standing outside, and he noted that Sean had been stabbed. Posey went inside the apartment and saw that the living room window had been broken from the outside. Exploring further, he found appellant sitting on a bed in a bedroom feeding a bottle to an infant.
>
> Oakley refused to release the child and stated that he was trying to kill it. Posey exited the bedroom and allowed other officers whom he had called for backup to communicate with appellant. Appellant told the other officers that he would snap or twist the baby's neck off if anything happened and that he was "going to take [his] baby tonight." At some point, appellant made a twisting motion with his right hand on the baby's head, and the nearest police officer "jumped him." He was assisted by others in taking the child from appellant.

*Oakley v. State*, 1997 WL 769500.

Nevertheless, on September 4, 2001, after serving only a few years, Mr. Oakley was paroled. (Doc. No. 9-3.) Rather than use this second-chance opportunity for good, on May 20, 2002, Arkansas authorities declared Mr. Oakley an absconder from parole (*id.*) and a warrant was issued two days later. (Doc. No. 9-4 at 18.) Unbeknownst to Arkansas authorities, Mr. Oakley

3

was living in Arizona where, on May 14, 2002, he was arrested for stabbing his girlfriend in the hand and setting her house on fire. (Doc. No. 9-5 at 7.) For these acts, on November 25, 2002, an Arizona court sentenced Mr. Oakley to thirteen and a half years in the Arizona Department of Corrections. (Doc. No. 2 at 5.)

Arizona authorities released Mr. Oakley on July 12, 2013 (Doc. No. 9-4 at 16), and he was given yet another chance when Arkansas authorities again granted him supervised parole on August 5, 2013. (Doc. No. 9-5 at 1.) Although violating his conditions,[2] Mr. Oakley remained on supervised parole until January 2, 2015, when he was arrested for second degree murder. (Doc. Nos. 9-4 at 2-3; 9-6.) On January 9, 2015, the Arkansas Parole Board held a hearing and revoked Mr. Oakley's parole for violating the law and for alcohol and controlled substance abuse. (Doc. No. 9-7.) The pending murder charge was later reduced to battery and then dropped, presumably because Mr. Oakley had been remanded to the ADC to serve the remainder of his original twenty-year sentence. (Doc. No. 9-8.)

Mr. Oakley has now filed a Petition for Writ of Habeas Corpus believing he should have been given credit for the approximately eleven years he served in the Arizona Department of Corrections. Mr. Oakley states he is "still incarcerated" two and a half years past his discharge date. (Doc. No. 2 at 5.) He says, "Arkansas knew I was in prison yet never contacted me for extradition." (*Id.*)

Respondent has weighed in on this matter and argues, "The ADC has acted lawfully by accounting for the 11 years that petitioner evaded his Arkansas supervision when calculating his

---

[2] For example, he was arrested for driving while intoxicated on November 19, 2014. (Doc. No. 9-4 at 5.)

maximum release date as March 10, 2027." (Doc. No. 9 at 3.) Respondent cites to Arkansas Code Annotated § 16- 93-610(a) and that "[t]ime served . . . shall continue only during the time in which a prisoner is actually confined in a county jail or other local place of lawful confinement or while under the custody and supervision of the department [of Correction]." Respondent argues, "The statute makes no provision for time served in another state, but refers to "local" confinement and incarceration while the prisoner is in the custody and under the supervision of the ADC." (*Id.*)

Based on a careful review of the pleadings, for the following reason, I recommend dismissal of the Petition.

## II.   ANALYSIS

This is a straight forward matter. From a practical standpoint, it would not be just to credit Mr. Oakley for time served on his original Arkansas sentence for a wholly unrelated crime committed in Arizona. The Arkansas Supreme Court similarly addressed a very similar issue in *Allen v. State*, 294 Ark. 209 (1988). The Court held:

> Allen contends that his sentence should be credited with approximately two years for the time he served in out of state jails, as well as the four months credit he received while jailed in Arkansas. Ark. Stat. Ann. § 41-904 (Repl. 1977)[3] provides: "If a defendant is held in custody for conduct that results in a sentence to imprisonment, the court shall credit the time spent in custody against the sentence." We have always strictly construed this statute. The statute provides for jail time credit against a sentence where the pretrial incarceration was imposed due to the conduct that resulted in a conviction and sentence.
>
> We only allow credit for jail time served in Arkansas on this charge. *Hughes v. State*, 281 Ark. 428, 664 S.W.2d 471 (1984); *Cannon v. State*, 265 Ark. 270, 578 S.W.2d 20 (1979). In *Boone v. State*, 270 Ark. 83, 85, 603 S.W.2d 410 (1980), we stated:
>
>> Our statute requires that a defendant held in custody for conduct that results in a sentence to imprisonment be given credit for the time spent in custody against his sentence. Ark. Stat. Ann. § 41–904

---

[3] The current statute is Arkansas Code Annotated § 5-4-404.

5

> (Repl. 1977). Jail time credit is, therefore, appropriate when a defendant's pretrial incarceration is due to his inability to make bail, but is inappropriate for time served in connection with wholly unrelated charges based on conduct other than for which the defendant is ultimately sentenced.
>
> The time Allen was held in jail in Texas and in Tennessee prior to his waiving extradition from Tennessee to Arkansas cannot be credited against his sentence for he is not entitled to credit for jail time served as a fugitive while awaiting his return to Arkansas. *Hughes v. State*, 260 Ark. 399-A, 540 S.W.2d 592 (1976). Furthermore, we have refused to grant credit for jail time served on another charge. *McGirt v. State*, 289 Ark. 7, 708 S.W.2d 620 (1986); *Hughes v. State, supra*. The trial court credited Allen with all the jail time served to which he was entitled.

*Allen v. State*, 294 Ark. 209 (1988).

Respondent points to Arkansas Code Annotated § 16-93-610 (a) which states, "Time served . . . shall continue only during the time in which a prisoner is actually confined in a county jail or other local place of lawful confinement or while under the custody and supervision of the department." Following the Arkansas Supreme Court's direction on strict construction, it is clear that credit for Mr. Oakley's Arkansas sentence is only to be given to time served under the authority of the State of Arkansas and the Arkansas Department of Correction. Therefore, his Petition is wholly without merit.

### III.   CERTIFICATE OF APPEALABILITY

Respondent perceives Mr. Oakley's petition falls under 28 U.S.C. § 2254. In the event this Petition is construed to fall under § 2254, pursuant to 28 U.S.C. § 2253 and Rule 11 of the Rules Governing Section 2554 Cases in the United States District Court, courts must determine whether to issue a certificate of appealability in the final order. In § 2254 cases, a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1)-(2). I find no issue on which Mr. Oakley has made a substantial showing of a denial of a constitutional right. Accordingly, no certificate of appealability should

issue.

## IV.     CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. Mr. Oakley's Petition for Writ of Habeas Corpus (Doc. No. 2) be DISMISSED with prejudice.

2. A certificate of appealability should not be issued.

DATED this 4th day of October, 2018.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE